UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HIAWAKA BANKS,

    Plaintiff,

v.

FCA US LLC,

    Defendant.

Case No. 26-cv-
Hon.

_____

ERIC STEMPIEN (P58703)
MALLORIE M. BLAYLOCK-DANNA (P84331)
STEMPIEN LAW, PLLC
Attorneys for Plaintiff
38701 Seven Mile Rd., Suite 445
Livonia, MI 48152
P/F: 734-744-7002
eric@stempien.com
mallorie@stempien.com
_____

## COMPLAINT AND JURY DEMAND

Plaintiff, Hiawaka Banks, by and through her attorneys, Stempien Law, PLLC, hereby complains against Defendant, FCA US LLC, and in support thereof states:

1. Plaintiff, Hiawaka Banks ("Banks" or "Plaintiff") is a resident of the City of Rockford, County of Winnebago, Illinois.

1

2.     Defendant, FCA US LLC, ("FCA" or "Defendant") is a for-profit corporation which conducts systematic and continuous business in the City of Auburn Hills, County of Oakland, Michigan.

3.     Jurisdiction is vested with this Court pursuant to 28 USC §1331, 42 USC §2000e, et. seq., and 28 USC §1367.

4.     The events giving rise to this action occurred within the Eastern District of Michigan.

5.     In or about September 2023, Banks filed a Charge of Discrimination with the Michigan Department of Civil Rights ("MDCR") (MDCR No. 641613) and/or Equal Employment Opportunity Commission ("EEOC") (EEOC No. R 23A-2024-00928). On or about March 31, 2026, the MDCR and/or EEOC issued a Dismissal and Notice of Rights letter to Banks for this Charge.

6.     In or about February 2024, Banks filed a Charge of Discrimination with the MDCR (MDCR No. 652561) and/or EEOC (EEOC No. R 23A-2025-00744). On or about April 1, 2026, the MDCR and/or EEOC issued a Dismissal and Notice of Rights letter to Banks for this Charge.

## GENERAL ALLEGATIONS

7.     Banks' race is African American and her sex is female.

8.     In or about March of 2012, Banks began her employment with FCA as an Operation Specialist/Assembly Worker.

2

9. Bank continued to hold her position as Operation Specialist/Assembly Worker until her employment was terminated on November 25, 2024.

10. During her tenure as an Operation Specialist/Assembly Worker, Banks was subjected to discrimination, harassment, and retaliation based on her race and sex.

11. In or about early 2022, Banks' male co-worker reported to Banks and their Union that he saw a supervisor, Tim Walton ("Walton") take pictures of Banks from behind.

12. In April 2022, Banks reported Walton's sexual harassment to Defendant through its "Stellantis Ethics Hotline EEOC."

13. Following Banks' reporting of Walton for sexual harassment, Banks was retaliated against for reporting Walton for sexual harassment.

14. Robert ("Robert"), the Union's Committeeman, refused to issue a grievance to Walton, who he was and/or is friends with.

15. Accordingly, Banks reported Walton up the chain of command to John Adams ("Adams") and requested a grievance.

16. Adams thereafter met with Tom Kelley ("Kelley"), the plant manager and Walton's boss. Kelley advised Adams that he would throw out two (2) write-ups against Banks, if Adams and Robert threw out Banks' sexual harassment grievance against Walton.

17. The subject write ups against Bank were frivolous and harassing; one was issued because Banks did not put a 500-pound engine up on her own, when it takes two people. The write ups against Banks were issued by Walton.

18. In or about July 2023, Banks began being harassed and discriminated against because of her race.

19. A white female employee harassed Banks for wearing a Juneteenth shirt. Banks' supervisor, Alex ("Alex"), reported the incident to Human Resources, Banks received a 5-day suspension, and the white employee received a warning.

20. In or about August 2023, Banks received a promotion allowing her unlimited overtime but, upon Banks' August 2023 promotion, Walton became her supervisor.

21. Banks was disciplined and written up three (3) times by Walton in the first week following her promotion; the first week that Walton was Banks' supervisor.

22. Walton disciplined and wrote up Banks for sitting down.

23. Walton disciplined and wrote up Banks for leaving her area to use the restroom.

24. Banks was also disciplined and written up because Walton did not like that Banks' post-promotion trainer was not with Banks at her desk, because Walton wanted Banks' trainer to be with her at all times.

25. Thereafter, Banks' post-promotion trainer wrote a witness statement to Defendant's Labor Relations which indicated that the three (3) write ups issued to Banks by Walton were unfounded, and was later questioned by the Kelley and Roberts concerning the same.

26. Banks and her post-promotion trainer then reported Walton's unfounded write ups to Defendant's Human Resources.

27. In retaliation for complaining to Defendant about Walton's discriminatory and retaliatory treatment, Banks was demoted the same week.

28. In or about September 2023, Defendant finished its investigation into Banks' April 2022 report of sexual harassment and found no finding of wrongdoing.

29. In October 2023, Banks discovered that Defendant (Stellantis Chrysler) had its own internal EEOC.

30. Banks sought assistance from her Union Steward, Kia ("Kia") regarding Banks' aforementioned grievances and was advised by Kia that she would have to 'sleep with management in order for them to leave Banks alone.'

31. In or about December 2023, Plaintiff was verbally harassed by Kia.

32. In or about December 2023, as a result of her employment conditions, Banks sought medical treatment, was diagnosed with PTSD, and was forced to go on a medical leave of absence.

33. Banks' last day working prior to medical leave was approximately December 21, 2023.

34. From approximately January 7, 2024 to May 5, 2024, Banks was on medical leave and did not work.

35. On or about May 6, 2024, Banks returned to work following her medical leave, was hailed into a meeting with numerous male employees, and was advised that Defendant received an anonymous tip in December of 2023 alleging that Banks had offered and/or gave men blunts and $40.00, in exchange for these men agreeing to have sex with Banks.

36. During this meeting, Defendant proceeded to question Plaintiff about her private sex life, which caused her extreme humiliation and embarrassment.

37. Further exacerbating Plaintiff's mental anguish, Plaintiff then learned during this meeting that when Defendant investigated the frivolous claim that Banks was offering drugs and money in exchange for sex, Defendant went around the plant asking multiple male co-workers of Banks whether she had offered them blunts and $40.00 to have sex with her.

38.    Defendant's actions caused these male employees to treat Banks differently and look at her strangely, which caused Banks to suffer further humiliation and reputational harm.

39.    In or about June 2024, Larry ("Larry"), An overtime supervisor, refused to allow Banks to work overtime. However, Banks' white co-worker, Leann ("Leann") who had just returned to work after a 15-year leave of absence was permitted to work overtime.

40.    Leann's knowledge was outdated, as Banks and Leann were working on battery powered vehicles and Leann had never worked on any type of electric car. Banks, on the other hand, was knowledgeable and was the head of the all-electric Ram truck program, which she had been working on for about two years.

41.    As a result of Defendant's discriminatory and retaliatory conduct, Banks reported to Labor Relations that she was being held to a different standard than her white co-worker by Larry.

42.    In or about July 2024, Plaintiff had a minor accident in a work vehicle and was disciplined with a harsh 30-day suspension as a result, which was a punishment in violation of Defendant's policy.

7

43. Banks requested that Robert issue a grievance to labor relations and Defendant's management because of the harsh and unwarranted punishment, but he refused.

44. Following the minor accident, Robert claimed Defendant had a policy, "The Pre and Post Production Vehicle" policy, which provided that Banks was barred from working overtime for a one (1) year period following an incident in a work vehicle.

45. Banks reviewed the "The Pre and Post Production Vehicle" policy and learned that it does not state what Robert claimed.

46. Robert's actions were discriminatory and retaliatory, as he was making efforts to have Banks banned from working overtime.

47. FCA refused to reverse the suspension and Banks was suspended from work for thirty (30) days, which caused her to suffer anxiety, emotional distress, and wage loss.

48. In or about August 2024, upon Banks' return to work after her suspension, she was advised that her employment would be termination if there were any more incidents.

49. On or about August 8, 2024, Robert stated to Banks, "What the f**k are you looking at, ain't nobody looking at you!" when Banks simply looked Robert's

way. For this instance of verbal harassment, Robert was given only a verbal warning by Labor Relations.

50. On or about November 14, 2024, Banks' supervisor, Alex, gave Banks and her co-worker a direct order to perform repair work on the shipping dock.

51. Per Defendant's policy and posted signs, it was not safe or permitted for Banks and her co-worker to be working where Alex directed them to.

52. Banks reported Alex's unsafe order the same day to Sharta Burston ("Burston") of Labor Relations.

53. In retaliation for Banks' complaint about Alex's safety violation, Alex, Aaron in the safety department ("Aaron"), and Burston complained that Banks' nails were over ¼ inch long, in violation of company policy.

54. However, Banks' nails were within the length limits of Defendant's policy and Banks provided Burston with a video of her nails against a ruler, showing they were an appropriate length.

55. Nonetheless, Banks was still put on notice and, on November 15, 2024, was written up for "failure to follow safety procedures" and "failure to exert normal effort."

56. On or about November 25, 2024, Banks was terminated from her employment with Defendant in retaliation for her opposing race and sex discrimination.

9

57. In further retaliation, Defendant then sought to not pay out Banks' earned vacation time.

58. When Banks raised the possibility of legal action to recover a payout of her unpaid, earned vacation time, Defendant then claimed that not paying out the vacation time was just a mistake.

59. Upon Banks' review of her termination papers, she discovered that a supervisor, Nique, who Banks had previously reported to Defendant for mob action and for trying to take away Banks' overtime, stated that Banks' nails were so long that she was not able to hold any tools to do any work. However, in the next paragraph, Nique inadvertently admitted that Banks actually could work, by stating that Banks did the drilling and torque (both major tools).

60. If Banks' nails were too long for her to hold tools, Banks would not be able to use a drill or torque wrench.

61. Upon Banks' review of her termination papers, she also discovered that an employee of Defendant's, Paul ("Paul"), who Banks reported to Defendant the week before she was terminated and numerous times previously for race discrimination and safety violations, lied twice in his report.

62. Upon Banks' review of her termination papers, she also discovered that Tom, who Banks previously reported for verbal abuse, provided false statements concerning Banks.

63. Upon Banks' review of her termination papers, she also discovered that Aaron, the safety department representative who Banks had previously reported to Defendant for unlawfully individually resealing beverages and food items provided false statements concerning Banks on the report.

64. Upon Banks' review of her termination papers, she also discovered that she was written up and disciplined on Saturday, August 19, 2023, however, Banks did not work on August 19, 2023.

65. Upon Banks' review of her termination papers, she also discovered that she was written up and disciplined twice during the month of January 2024 – notwithstanding that Banks was on a leave of absence and did not work between approximately December 21, 2023 through May 5, 2024.

66. On or about December 20, 2024, Banks filed a grievance with the Union for unjust termination and appealed her discharge. To date, Banks' appeal remains pending.

67. The employment disciplinary actions taken against Banks were because of her race and/or because she reported an opposed sexual harassment and racial harassment.

68. Defendant's discharge of Banks was pretext for discharging Banks from her employment because she reported and opposed violations of Title VII of the

Civil Rights Act of 1964 ("Title VII") and Elliott-Larsen Civil Rights Act ("ELCRA"), MCL 37.2101 et seq.

## COUNT I – VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT (RACE DISCRIMINATION)

69.    Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further states that:

70.    Title VII, specifically 42 USC §2000e-2, provides that "it shall be an unlawful employment practice for an employer… to… discharge…or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment because of such individual's race…"

71.    Plaintiff was an employee of Defendant's.

72.    Defendant was Plaintiff's employer as that term is defined by Title VII.

73.    Plaintiff is a member of a protected class because of her race.

74.    Plaintiff was qualified for her position of employment.

75.    Plaintiff suffered adverse employment actions, including but not limited to, verbal harassment, allegations that she was prostituting herself and offering to provide drugs to her male coworkers, limitation, deprivation of employment benefits, reprimand, suspension, discipline, and discharge, as more fully explained herein above.

76.    Defendant's stated reasons for the adverse employment actions were false.

12

77. Defendant's stated reasons for the adverse employment actions were pretext for race discrimination.

78. Other, white employees were not subjected to the same adverse employment actions as Plaintiff.

79. Plaintiff was discharged because of her race.

80. As a direct and proximate result of Defendant's violations of Title VII, Plaintiff has suffered damages including, but not limited to, lost past and future wages, lost past and future employment benefits, loss of earning capacity, severe emotional distress, costs and attorney fees.

## COUNT II – VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT
## (RACE HARASSMENT)

81. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further states that:

82. At all material times, Plaintiff was an employee, and Defendant was her employers, covered by and within the meaning of 42 USC § 2000e et. seq.

83. Plaintiff was racially harassed by Defendant's agents and employees throughout the course of her employment as fully explained herein, constituting disparate treatment and impact on Plaintiff.

84. Plaintiff complained about harassment, discrimination, and the events described herein to Defendant.

85. Defendant did not promptly remedy the ongoing racial harassment when Plaintiff complained.

86. Defendant permitted the racial harassment to continue.

87. The conduct of Defendant's agents and employees in racially harassing Plaintiff constitutes racial discrimination in violation of Title VII.

88. As a result of the foregoing, Plaintiff has suffered damages, including but not limited to lost past and future wages, lost past and future employment benefits, loss of earning capacity, severe emotional distress, costs and attorney fees.

## COUNT III – VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT (RETALIATION FOR OPPOSING RACE HARASSMENT AND DISCRIMINATION)

89. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further states that:

90. Plaintiff engaged in protected activity when she complained to Defendant about the racial harassment and discrimination by Defendant's employees, as more fully described above.

91. Plaintiff's protected activity was known to Defendant.

92. Defendant failed and refused to take any action regarding the harassment and discrimination of Plaintiff.

93. Plaintiff suffered adverse employment actions, including but not limited to, verbal harassment, allegations that she was prostituting herself and offering

14

to provide drugs to her male coworkers, limitation, deprivation of employment benefits, reprimand, suspension, discipline, and discharge, as more fully explained herein above.

94. There is a causal connection between the protected activity and the adverse employment actions taken against Plaintiff.

95. As a result of the foregoing, Plaintiff has suffered damages, including but not limited to lost past and future wages, lost past and future employment benefits, loss of earning capacity, severe emotional distress, costs and attorney fees.

## COUNT IV – VIOLATION OF ELLIOTT-LARSEN CIVIL RIGHTS ACT (RACE DISCRIMINATION)

96. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further states that:

97. The ELCRA, specifically MCL 37.2202, et seq., provides that an employer shall not "discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of… race…" MCL 37.2202(1)(a).

98. Plaintiff was an employee of Defendant's and Defendant was Plaintiff's employer as that term is defined by ELCRA.

99. Plaintiff is a member of a protected class because of her race.

100. Plaintiff was qualified for her position of employment with Defendant.

101. Plaintiff suffered adverse employment actions, including but not limited to, verbal harassment, allegations that she was prostituting herself and offering to provide drugs to her male coworkers, limitation, deprivation of employment benefits, reprimand, suspension, discipline, and discharge, as more fully explained herein above.

102. Defendant's stated reasons for the adverse employment actions were false and pretext for race discrimination.

103. Other white employees were not subjected to the same adverse employment actions as Plaintiff.

104. Plaintiff was discharged because of her race.

105. As a direct and proximate result of Defendant's violations of ELCRA, Plaintiff has suffered damages, including, but not limited to lost past and future wages, lost past and future employment benefits, loss of earning capacity, severe emotional distress, costs and attorney fees.

**COUNT V – VIOLATION OF ELLIOTT-LARSEN CIVIL RIGHTS ACT
(RACE HARASSMENT)**

106. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further states that:

107. At all material times, Plaintiff was an employee, and Defendant was her employers, covered by and within the meaning of the ELCRA, MCL 37.2101 et seq.

16

108. Plaintiff was racially harassed by Defendant's agents and employees throughout the course of her employment as fully explained herein, constituting disparate treatment of, and impact on, Plaintiff.

109. Plaintiff complained about harassment, discrimination, and the events described herein to Defendant.

110. Defendant did not promptly remedy the ongoing racial harassment when Plaintiff complained.

111. Defendant permitted the racial harassment to continue.

112. The conduct of Defendant's agents and employees in racially harassing Plaintiff constitutes racial discrimination in violation of the ELCRA.

113. As a result of the foregoing, Plaintiff has suffered damages, including but not limited to lost past and future wages, lost past and future employment benefits, loss of earning capacity, severe emotional distress, costs and attorney fees.

## COUNT VI – VIOLATION OF ELLIOTT-LARSEN CIVIL RIGHTS ACT (RETALIATION FOR OPPOSING RACE HARASSMENT AND DISCRIMINATION)

114. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further states that:

115. Plaintiff engaged in protected activity when he complained to Defendant about the racial harassment and discrimination by Defendant's employees, as more fully described above.

116. Plaintiff's protected activity was known to Defendant.

117. Defendant failed and refused to take any action regarding the harassment and discrimination of Plaintiff.

118. Plaintiff suffered adverse employment actions, including but not limited to, verbal harassment, allegations that she was prostituting herself and offering to provide drugs to her male coworkers, limitation, deprivation of employment benefits, reprimand, suspension, discipline, and discharge, as more fully explained herein above.

119. There is a causal connection between the protected activity and the adverse employment actions taken against Plaintiff.

120. As a result of the foregoing, Plaintiff has suffered damages, including but not limited to lost past and future wages, lost past and future employment benefits, loss of earning capacity, severe emotional distress, costs and attorney fees.

### COUNT VII – VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT (SEXUAL HARASSMENT)

121. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further states that:

122. At all material times, Plaintiff was an employee, and Defendant was her employer, covered by and within the meaning of 42 USC § 2000e et. seq.

123. Plaintiff was sexually harassed by Defendant's agents and employees throughout the course of her employment, including but not limited to

18

unwelcome comments and conduct of an offensive and sexual nature directed at Plaintiff and the creation of a hostile work environment, as fully articulated herein above.

124. Plaintiff complained about the harassment and the events described above to Defendant.

125. The sexual harassment was severe and pervasive.

126. Defendant did not promptly remedy ongoing sexual harassment when Plaintiff complained.

127. Defendant permitted the sexual harassment to continue.

128. The conduct of Defendant's agents and employees in sexually harassing Plaintiff constitutes sexual harassment and discrimination in violation of 42 USC § 2000e et seq.

129. As a result of the foregoing, Plaintiff has suffered damages, including but not limited to: lost past and future wages, lost past and future employment benefits, loss of earning capacity, severe emotional distress, costs and attorney fees.

## COUNT VIII – VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT (RETALIATION FOR OPPOSING SEXUAL HARASSMENT)

130. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further states that:

131. Plaintiff engaged in protected activity when she complained to Defendant about the sexual harassment by Defendant's employees, as fully described above.

132. Plaintiff's protected activity was known to Defendant.

133. Defendant failed and refused to take any action regarding the sexual harassment of Plaintiff.

134. Plaintiff suffered adverse employment actions, including but not limited to, verbal harassment, allegations that she was prostituting herself and offering to provide drugs to her male coworkers, limitation, deprivation of employment benefits, reprimand, suspension, discipline, and discharge, as more fully explained herein above.

135. There is a causal connection between the protected activity and the adverse employment actions taken against Plaintiff.

136. As a result of the foregoing, Plaintiff has suffered damages, including but not limited to: lost past and future wages, lost past and future employment benefits, loss of earning capacity, severe emotional distress, costs and attorney fees.

## COUNT IX – VIOLATION OF ELLIOTT-LARSEN CIVIL RIGHTS ACT (SEXUAL HARASSMENT)

137. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further states that:

20

138. At all material times, Plaintiff was an employee, and Defendant was her employer, covered by and within the meaning of the ELCRA, MCL 37.2101 et seq.

139. Plaintiff was sexually harassed by Defendant's agents and employees throughout the course of her employment as fully explained herein, constituting disparate treatment of, and impact on, Plaintiff.

140. The sexual harassment was severe and pervasive.

141. Plaintiff complained about harassment and the events described herein to Defendant.

142. Defendant did not promptly remedy the ongoing sexual harassment when Plaintiff complained.

143. Defendant permitted the sexual harassment to continue.

144. The conduct of Defendant's agents and employees in sexual harassing Plaintiff constitutes sexual harassment and sex discrimination in violation of the ELCRA.

145. As a result of the foregoing, Plaintiff has suffered damages, including but not limited to lost past and future wages, lost past and future employment benefits, loss of earning capacity, severe emotional distress, costs and attorney fees.

## COUNT X – VIOLATION OF ELLIOTT-LARSEN CIVIL RIGHTS ACT (RETALIATION FOR OPPOSING SEXUAL HARASSMENT)

146. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further states that:

147. Plaintiff engaged in protected activity when she complained to Defendant about the sexual harassment by Defendant's employees, as fully described above.

148. Plaintiff's protected activity was known to Defendant.

149. Defendant failed and refused to take any action regarding the harassment of Plaintiff.

150. Plaintiff suffered adverse employment actions, including but not limited to, verbal harassment, allegations that she was prostituting herself and offering to provide drugs to her male coworkers, limitation, deprivation of employment benefits, reprimand, suspension, discipline, and discharge, as more fully explained herein above.

151. There is a causal connection between the protected activity and the adverse employment actions taken against Plaintiff.

152. As a result of the foregoing, Plaintiff has suffered damages, including but not limited to lost past and future wages, lost past and future employment benefits, loss of earning capacity, severe emotional distress, costs and attorney fees.

WHEREFORE, Plaintiff, Hiawaka Banks, prays that this Honorable Court enter a judgment in her favor against Defendant, FCA US LLC, in an amount that this Court deems fair and just, plus costs, interest and attorney fees.

## JURY DEMAND

Plaintiff Hiawaka Banks hereby demands a trial by jury of the within cause.

Respectfully submitted,

STEMPIEN LAW, PLLC

*/s/ Mallorie M. Blaylock-Danna*
Mallorie M. Blaylock-Danna (P84331)
Attorney for Plaintiff
38701 Seven Mile Rd., Suite 445
Livonia, MI 48152
P/F: 734-744-7002
mallorie@stempien.com

Dated: April 21, 2026